An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-999

Filed 1 July 2026

Pitt County, Nos. 25JA000019-730, 25JA000020-730

IN THE MATTER OF: M.H., D.C.

Appeal by respondent-father from order entered 17 June 2025 by Judge Mario E. Perez in Pitt County District Court. Heard in the Court of Appeals 3 June 2026.

> *Miller & Audino, LLP, by Jay Anthony Audino, for the petitioner-appellee Pitt County Department of Social Services.*
>
> *Ward & Smith, P.A., by Mary V. Cavanagh, for the Guardian ad Litem.*
>
> *David A. Perez, for the respondent-appellant-father.*

TYSON, Judge.

Respondent-Father appeals from the trial court's order finding his minor children, "Matt" and "David" to be neglected. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of the minors). We affirm.

## I. Background

Mother and Respondent-Father are the parents of Matt and David. Respondent-Father was determined to be their biological father by court order in 2019. Matt and David have four additional minor siblings born of Mother and two

other fathers. Mother and those four children are not part of this appeal.

Matt and David were adjudicated as neglected juveniles in 2019 and placed into the custody of their maternal grandmother ("Grandmother"). Grandmother was awarded legal custody of them in 2021. Mother was not permitted to have unsupervised contact with the children, but she was permitted to live at Grandmother's home with the children. Mother was unable to parent her children independently due to an intellectual disability.

On 6 February 2025, the Pitt County Department of Social Services ("DSS") filed petitions, which alleged Matt and David were neglected and dependent. The children were ten and eleven years old. The petitions alleged: (1) an incident in 2022 when Grandmother could not handle the children and had called the police; (2) a 2024 allegation asserting Mother had punched an older sibling; (3) Mother's physical abuse of David; (4) interviews and examinations at a child advocacy health clinic where David and another sibling had admitted to being choked and hit by Mother and had observed siblings also being hit by Mother; and, (6) Grandmother's failure to supervise Mother around the children and to protect them from abuse by Mother. The petitions further alleged the fathers, including Respondent-Father, were not involved with the children's lives, and DSS had been unable to contact them.

On 6 February 2025, the children were removed from maternal Grandmother's care and placed into the non-secure custody of DSS. An adjudication hearing was

held before the trial court on 8 May 2025. Prior to the start of the hearing, a "Consent Agreement" was prepared and signed by Respondent-Father and his attorney. The Consent Agreement states the parties stipulate "clear, cogent, and convincing evidence" supports allegations numbered 1 through 19 in the petitions. The Consent Agreement further states Mother did not admit to specific factual allegations, but she had acknowledged "sufficient facts exist to allow the [c]ourt to conclude . . . the juveniles are neglected by clear and convincing evidence." The Consent Agreement specifies Respondent-Father "is a non-offending parent." It states: "Based upon the above stipulation of the parties, the Court concludes as a matter of law . . . the foregoing factual findings are sufficient to adjudicate the juvenile(s) named above as . . . Neglected, within the meaning of N.C.G.S 7B-101(15)."

The Consent Agreement was signed by DSS, counsel for DSS, Mother and her counsel, Respondent-Father and his counsel, another father and his counsel, the GAL Attorney Advocate, and the GAL Program Supervisor and/or Volunteer. Respondent-Father's attorney was absent during the 8 May 2025 afternoon hearing due to an appointment, but he and Respondent-Father had both signed the Consent Agreement. The Adjudication Order states, "Respondent-Fathers via their attorneys took no position." The court accepted the Consent Agreement "based on all the signatures and the consent on the record."

DSS also entered documentary evidence of the child advocacy health clinic

reports, local police department records, and education records of Matt, David, and a sibling. On 17 June 2025, the court entered a written Adjudication Order pursuant to N.C. Gen. Stat. § 7B-807 (2025), which set forth twenty-one findings of fact purportedly established by "clear, cogent, and convincing" evidence. The court's conclusions of law based on the findings of fact found Matt, David and their siblings were neglected juveniles. The Adjudication Order provided DSS with discretion to place Matt and David with Respondent-Father, if appropriate.

The trial court held a disposition hearing on 26 June 2025. By order filed on 25 July 2025, the court granted custody of Matt and David and their siblings to DSS. DSS was ordered to continue to make reasonable efforts to reunite the children with family members. Respondent-Father was represented by counsel but was not present at the dispositional hearing. He was ordered to develop a case plan with DSS and to submit to drug and mental health testing and evaluations. Respondent-Father appeals.

## II.    Issue

Respondent-Father argues the trial court erred by adjudicating Matt and David neglected when he did not consent to the order and there was no other proper foundation for any conclusion of law the juveniles were neglected by him.

## III.    Jurisdiction

This Court possesses jurisdiction over this appeal pursuant to N.C. Gen. Stat.

§ 7B-1001(a)(3) (2025).

## IV.    Standard of Review

> The role of this Court in reviewing a trial court's adjudication of neglect and abuse is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact.  If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary.  The trial court determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom.  If a different inference may be drawn from the evidence, the trial court alone determines which inferences to draw and which to reject.

*In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007), *aff'd as modified*, 362 N.C. 446, 665 S.E.2d 54 (2008) (internal citations, quotations, and brackets omitted).

## V.    Consent Agreement

Respondent-Father argues he did not properly consent to the adjudication of neglect.  We disagree.

"Article 8 of the Juvenile Code provides two procedural paths for an adjudication of abuse, neglect, or dependency: an adjudicatory hearing or an adjudication by consent."  *In re J.S.C.*, 253 N.C. App. 291, 294, 800 S.E.2d 126, 128 (2017).

N.C. Gen. Stat. § 7B-801 governs the adjudicatory hearing and permits the trial court in an abuse, neglect, or dependency hearing to enter a "consent adjudication order," so long as: (1) all parties are present or represented by counsel,

who is present and authorized to consent; (2) the juvenile(s) are represented by counsel; and, (3) the court makes sufficient findings of fact. N.C. Gen. Stat. § 7B-801(b1) (2025). A valid consent adjudication order requires "no additional evidence of neglect need[] be introduced at the adjudication hearing and no further substantive findings of fact by the trial court establishing neglect [are] necessary to support its adjudication." *In re R.L.G.*, 260 N.C. App. 70, 73, 816 S.E.2d 914, 917 (2018).

Here, Respondent-Father conflates the stipulation of facts entitled "Consent Agreement" with a consent adjudication order, which would be made under N.C. Gen. Stat. § 7B-801(b1) (2025). In contrast to a true consent adjudication order, the Consent Agreement entered in this case was not the only evidence relied upon by the court to enter the Adjudication Order. The trial court held a hearing in which additional evidence was presented to support the findings of fact by clear and convincing evidence.

A stipulation of facts "made by a party [can] be used in support of an adjudication." *In re R.L.G.*, 260 N.C. App. at 73, 816 S.E.2d at 917. This is one form of evidence the trial court may consider. As part of an adjudication hearing under N.C. Gen. Stat. § 7B-807(a):

> If the court finds from the evidence, including *stipulations by a party*, that the allegations in the petition have been proven by clear and convincing evidence, the court shall so state. A record of specific stipulated adjudicatory facts shall be made by either reducing the facts to a writing, signed by each party stipulating to them and submitted to

the court; or by reading the facts into the record, followed
by an oral statement of agreement from either party
stipulating to them.

N.C. Gen. Stat. § 7B-807(a) (2025) (emphasis added). The trial court's Adjudication

Order specifically states it is entered pursuant to N.C. Gen. Stat. § 7B-807(2025). *Id.*

Respondent-Father argues the stipulated adjudicatory facts were not properly

reduced to writing and signed. The stipulated facts were clearly identified and

incorporated by reference into the Consent Agreement, which identified "the

following facts, as alleged and/or amended in the verified Juvenile Petition(s):

ALLEGATIONS: #1-19." The Consent Agreement, reviewed and accepted by the trial

court, most closely resembles a consent judgment, which "is a contract," and "[t]he

rules which courts have evolved for the interpretation of contracts are applicable to

consent judgments." *Yount v. Lowe*, 288 N.C. 90, 96, 215 S.E.2d 563, 567 (1975)

(citations and quotation marks omitted).

> A contract results when there is a meeting of the minds for
> the settlement or adjustment of asserted or disputed rights
> and obligations. The words chosen by the draftsman
> selected to reduce the agreement to writing are merely
> vehicles to make visible the mutual intention of the parties.
> Interpretation is, therefore, the ascertainment of that
> intent. To do so, the entire agreement must be examined
> with an understanding of the result to be accomplished and
> the situation of the parties at the moment the contract is
> made.

*Id.* (citations and quotation marks omitted). The referenced allegations, numbered

1 through 19, are clearly set forth in the petitions filed on 6 February 2025, and the

intent of the parties was to stipulate to the numbered facts contained within.

The adjudication order "shall be in writing and shall contain appropriate findings of fact and conclusions of law." N.C. Gen. Stat. § 7B-807(b) (2025). "[S]tipulations are judicial admissions and are therefore binding in every sense, . . . relieving the other party of the necessity of producing evidence to establish an admitted fact." *In re A.K.D.*, 227 N.C. App. 58, 60, 745 S.E.2d 7, 9 (2013) (citation and quotation marks omitted).

"However, stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *Id.* (citation and quotation marks omitted). While the signed Consent Agreement stipulates the facts are sufficient to find Matt and David neglected under N.C. Gen Stat. § 7B-101(15), ultimately, the conclusion of neglect is made by the trial court based upon all evidence. N.C. Gen Stat. § 7B-101(15) (2025).

In addition to the nineteen stipulated allegations, the trial court relied upon additional admitted clinical health care records, police records, and school records to conclude the children are neglected. Respondent-Father argues no specific exceptions to the trial court's findings of fact, simply asserting the Consent Agreement was ineffective as the basis of a consent adjudication order. "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *Koufman v. Koufman*, 330 N.C. 93,

97, 408 S.E.2d 729, 731 (1991) (citations omitted).

## VI.    Conclusion

The evidence supports the trial court's findings and conclusion to adjudicate the children as neglected.  The trial court's adjudication order is affirmed.  *It is so ordered.*

AFFIRMED.

Judge FLOOD concurs.

Judge WOOD concurs in the result by separate opinion.

Report per Rule 30(e).

No. COA25-999– *In re M.H., D.C.*

WOOD, Judge, concurring in the result.

Although I agree with the result reached by the majority, I write separately to address the inadequacy of the trial court's procedures in this case. The adjudication of a child as abused, neglected or dependent involves a balancing of some of society's most fundamental rights and requires the trial court to balance the protection of juvenile's rights of safety with a parent's "constitutional right to care for their children." *In re K.C.*, 386 N.C. 690, 691, 909 S.E.2d 170, 172 (2024). "'In the adjudicatory hearing, the court shall protect the rights of the juvenile and the juvenile's parent to assure due process of law.'" *In re K.P.*, 249 N.C. App. 620, 623, 790 S.E.2d 744, 747 (2016) (quoting N.C. Gen. Stat. § 7B-802 (2015)).

To ensure this balance is achieved, typically the trial court determines whether the allegations submitted in a juvenile petition are "proved by clear and convincing evidence" through the presentation of testimony and corroborative evidence. N.C. Gen. Stat § 7B-805 (2015); *see also In re K.C.*, 295 N.C. App. 363, 368-69, 905 S.E.2d 776, 781 (2024). If this process is to be forsaken in favor of judicial economy, it must be done in conformity with the legal requirements.

There are two paths the trial court may take when streamlining the adjudicatory process in abuse, neglect, and dependency cases: utilizing stipulations within a traditional adjudicatory process or completing a consent adjudication. The

two options have separate and distinct requirements to which trial courts must adhere.

"[S]tipulations are judicial admissions and are therefore binding in every sense, preventing the party who agreed to the stipulation from introducing evidence to dispute it and relieving the other party of the necessity of producing evidence to establish an admitted fact." *In re A.K.D.*, 227 N.C. App. 58, 60, 745 S.E.2d 7, 9 (2013) (quoting *Thomas v. Poole,* 54 N.C. App. 239, 241, 282 S.E.2d 515, 517 (1981)). "Courts look with favor on stipulations designed to simplify, shorten, or settle litigation and save cost to the parties, and such practice will be encouraged." *Eidson v. Kakouras*, 286 N.C. App. 388, 401, 880 S.E.2d 760, 770 (2022) (citation and quotation marks omitted). However, when our General Assembly created the specific statutory stipulation process for abuse, neglect, and dependency adjudications, it included rules that are stricter than stipulations by litigants in many other legal contexts.

> If the court finds from the evidence, including stipulations by a party, that the allegations in the petition have been proven by clear and convincing evidence, the court shall so state. A record of specific stipulated adjudicatory facts shall be made by either reducing the facts to a writing, signed by each party stipulating to them and submitted to the court; or by reading the facts into the record, followed by an oral statement of agreement from each party stipulating to them.

N.C. Gen. Stat. § 7B-807(a). The statute allows two options for factual stipulations:

(1) specific adjudicatory facts, reduced to writing and signed by each party stipulating

to them be submitted to the court; or (2) the facts are orally spoken into the record followed by an oral statement of agreement from each party stipulating to them. *Id.* "It is well established that stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *In re R.P.*, 276 N.C. App. 195, 201, 856 S.E.2d 868, 872 (2021) (quoting *In re R.L.G.*, 260 N.C. App. 70, 76, 816 S.E.2d 914, 919 (2018)). When adequate stipulations are made by the parties, the trial court is then "required to make findings of fact, adjudicate, and state conclusions of law arising on those facts, and enter judgment accordingly." *In re R.P.*, 276 N.C. App. at 203, 856 S.E.2d at 873.

In contrast, "[a]n adjudication of abuse, neglect or dependency in the absence of an adjudicatory hearing is permitted only in very limited circumstances." *In re Shaw*, 152 N.C. App. 126, 129, 566 S.E.2d 744, 746 (2002). Such a limited circumstance is a consent adjudication. "A consent adjudication 'is the agreement of the parties, their decree, entered upon the record with the sanction of the court.'" *In re R.L.G.,* 260 N.C. App. at 73, 816 S.E.2d at 917 ( quoting *In re Thrift*, 137 N.C. App. 559, 562, 528 S.E.2d 394, 396 (2000)).

"N.C. Gen. Stat. § 7–801(b1) authorizes the court to enter 'a consent adjudication order' only if: (1) all parties are present or represented by counsel, who is present and authorized to consent; (2) the juvenile is represented by counsel; and (3) the court makes sufficient findings of fact." *In re K.P.*, 249 N.C. App. at 623-24, 790 S.E.2d at 747. When a consent adjudication meets the statutory requirement

3

there is "no adjudicatory hearing, the court [does] not receive or weigh evidence, assess the credibility of witnesses, or otherwise engage in the process of fact-finding." *In re J.S.C.*, 253 N.C. App. 291, 295, 800 S.E.2d 126, 129 (2017).

In the case *sub judice*, the trial court conflated these two distinct procedures. On the morning of 8 May 2025, some of the parties involved in the case met and signed a document entitled "Consent Agreement." The document states that "by their signatures affixed hereto, that there is clear, cogent, and convincing evidence that would support the following facts as alleged and/or amended in the verified Juvenile Petition(s): Allegations #1-19." The document was signed by Mother, Mother's attorney, Respondent-Father, Respondent-Father's attorney, a social worker/supervisor, DSS' staff attorney, the GAL supervisor, GAL attorney, Suggs-Father, Suggs' provisional attorney, and Parks-Father's provisional attorney.

Later that afternoon, the trial court held an adjudication hearing. The order notes DSS' attorney, GAL attorney, Respondent-Father's attorney, and Mother's attorney as present for the hearing. However, in the transcript, it is clear that Respondent-Father's attorney was not present for the hearing as he had requested leave for a doctor's appointment. Furthermore, there is no evidence Respondent-Father himself was present for the hearing. It is clear neither Suggs-Father nor Parks-Father were present based on their respective attorney's discussions with the trial court. However, as Respondent-Father's attorney was not present, the trial

4

court did not engage in a conversation with his attorney, nor did it address Respondent-Father.

During the hearing, the DSS attorney stated, "I'm holding the consent agreement that stipulates a finding of neglect within the meaning of the statute." After confirming who signed the Consent Agreement, the trial court states, "All right based on all the signatures and the consent on the record, the Court's going to accept this consent agreement for these juveniles as neglected." The DSS attorney then requested to enter documentary evidence including the verified juvenile petition, Tedi-Bear Clinic records, Snow Hill Police Department records, and Green County School Board of Education records. The trial court replied, "These will be received into the record. All right. So adjudication is done. I'll sign the order." No additional testimony was given at the hearing.

On 17 June 2025, the trial court entered the written Adjudication Order. The order erroneously states both Respondent-Father and Respondent-Father's attorney were present for the hearing. Then prior to the findings, the order records the evidence:

> EVIDENCE: As evidence for the Adjudication, the Court received the Verified Petition filed in this matter as amended by the Consent Agreement, Tedi Bear records, Snow Hill records and Greene County School records. The Department, Guardian ad Litem and Respondent Mother stipulated to the Findings of Fact and entered consent as to the Adjudication and Disposition of this matter. *Respondents Fathers, via their attorneys, took no position.*

The trial court's order then states twenty-one findings of fact before concluding as a matter of law that the children meet the definition of neglected juveniles within N.C. Gen. Stat. § 7B-101(15).

It is clear, based on both the trial court's procedures and its Adjudication Order, that although the document was titled a "Consent Agreement" and the trial court purportedly accepted the "consent agreement for these juveniles as neglected," the requirements of N.C. Gen. Stat. § 7-801(b1) were not met to authorize the court to enter a "consent adjudication order."

The first prong of N.C. Gen. Stat. § 7-801(b1) requires *all* parties be present or represented by counsel, who is present and authorized to consent. N.C. Gen. Stat. § 7-801(b1). This clearly did not occur. During the hearing when the trial court was entering the order, it appears neither Respondent-Father nor his attorney was present. Additionally, neither of the other two fathers were present. Suggs-Father had a provisional attorney at the time the document was signed, and the trial court appointed him at the hearing. Parks-Father had a provisional attorney who stated he had not been able to speak with his prospective client and could take no position on the consent. Finally, the Adjudication Order itself states "Respondents Fathers, via their attorneys, took no position." Therefore, it is clear not all parties were present or represented by counsel, who was present and authorized to consent therefore the trial court could not enter a valid "consent adjudication order."

On appeal, the appellees argue that the "Consent Agreement" at least meets

6

the requirements under N.C. Gen. Stat. § 7B-807(a) to be considered stipulations. I agree that, at best, some of the allegations in the "Consent Agreement" can be seen as poorly conducted stipulations. Both Respondent-Father and his attorney signed the "Consent Agreement" which specifically stated, "[t]he parties agree/stipulate, by the signatures affixed hereto, that there is clear, cogent, and convincing evidence that would support the following facts, as alleged and/or amended in the verified Juvenile Petition(s): ALLEGATIONS: #1-19" and this agreement was submitted to the trial court. Although the specific adjudicatory facts are not written out as they should be, the allegations in the petition to which Father agreed are identified. This meets the requirement in N.C. Gen. Stat. § 7B-807(a) that allows for stipulations in that specific adjudicatory facts were reduced to writing and signed by each party stipulating to them prior to being submitted to the court.

However, "[i]t is well established that stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *In re R.P.*, 276 N.C. App. at 201, 856 S.E.2d at 872 (quoting *In re R.L.G.*, 260 N.C. App. at 76, 816 S.E.2d at 919). "The determination of whether a juvenile is neglected within the meaning of N.C. Gen. Stat. § 7B-101(15) is a conclusion of law." *In re R.L.G.*, 260 N.C. App. at 76, 816 S.E.2d at 918-19.

> The formulation of this conclusion requires the hearing judge to consider the properly admitted evidence, determine the weight and burden on DSS, and reconcile the nexus, if any, between the stipulated facts, and to adjudicate whether the child is neglected or abused. "The

7

> trial court's findings must consist of more than a recitation of the allegations contained in the juvenile petition. The trial court must, through processes of logical reasoning, based on the evidentiary facts before it, find the ultimate facts essential to support the conclusions of law."

*In re R.P.*, 276 N.C. App. at 202, 856 S.E.2d at 873 (quoting *In re K.P.*, 249 N.C. App. at 624, 790 S.E.2d at 747).

Here, allegations 18 and 19 in the juvenile petition, which were incorporated into the "Consent Agreement," are clearly conclusions of the law. They state that the juveniles are neglected and dependent as defined within North Carolina statutes. As conclusions of law, these two allegations cannot be stipulated to and are therefore invalid stipulations. Allegations 1-17 in the juvenile petition, which were incorporated into the "Consent Agreement," are facts, and despite the misleading title of "Consent Agreement," it appears Defendant-Father has effectively signed factual stipulations regarding those allegations.

The remaining stipulated facts, as well as the additional documentary evidence submitted during the adjudicatory hearing, are adequate support for the trial court's twenty-one findings of fact in the adjudication order and those findings support the trial court's conclusion that the juveniles meet the statutory requirements for neglected juveniles under N.C. Gen. Stat. § 7B-101(15). Therefore, I concur in the result affirming the trial court's order. However, I write to stress to the trial courts that "[a]s the link between a parent and child is a fundamental right worthy of the highest degree of scrutiny, the trial court must fulfill all procedural requirements in

8

*WOOD, J., concurring in the result.*

the course of its duty . . . ." *In re K.P.*, 249 N.C. App. at 627, 790 S.E.2d at 749. I support procedures which aid judicial economy, but the process must be done in conformity with the legal requirements. Otherwise, they may be subject to challenge or viewed as subterfuge designed to circumvent legal safeguards and undermine the integrity of the judicial process.